**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**THOMAS KEARNEY,**

       **Plaintiff,**       09-CV-00679(Sr)

**v.**

**GLENN S. GOORD, et al.,**

       **Defendants.**

---

## REPORT, RECOMMENDATION AND ORDER

    This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #31.

    Currently before the Court is defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. #13.

## BACKGROUND

    Plaintiff Thomas Kearney commenced this action pursuant to 42 U.S.C. § 1983,[1] alleging that on March 10, 2007, during his incarceration at the Attica Correctional Facility ("Attica"), Corrections Officer ("C.O."), Yackeren entered his cell, warned plaintiff to "be careful of who you fuck with" and removed numerous articles of

---

[1] Plaintiff's claims pursuant to 42 U.S.C. § 1981 were dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e) and 1915A for failure to state a claim. Dkt. #5.

personal property in retaliation for plaintiff's filing of a grievance against Counselor Donahue one week earlier, as well as "prior grievances."  Dkt. #1, ¶ 37.  On March 11, 2007, plaintiff alleges that C.O. Yackeren, C.O. Sinicki or Sergeant Berbary planted weapons in his property.  Dkt. #1, ¶ ¶ 37 & 43-44.  Plaintiff alleges that Sergeant Berbary fabricated evidence and testified falsely at the disciplinary hearing and that Captain Brown failed to interview an alleged informant and improperly determined that plaintiff was guilty of weapons possession, resulting in a punishment of four months in the Special Housing Unit ("SHU"), and a recommendation of four months loss of good time credit.  Dkt. #1, ¶¶  46 & 53-56.  Plaintiff alleges that Sergeant Berbary, C.O. Yackeren and C.O. Sinicki conspired to plant the weapon among plaintiff's possessions and Captain Brown conducted an unfair disciplinary hearing in furtherance of their "common goal of oppressing the prison population as a whole, but black and latino prisoners in particular" who they, and other members of a group of corrections officers that plaintiff labels the "Black Glove Crew," believed were threats to Attica's "'we do as we please' culture."  Dkt. #1, ¶ ¶ 38-40, 43-45 & 53.  Plaintiff alleges that members of the "Black Glove Crew" are "easily identified by the black leather gloves that they proudly display hanging partially out of their back pockets."  Dkt. #1, ¶ 133.

Between April 12 and May 4, 2007, plaintiff alleges that C.O. Stevens denied plaintiff "several meals" while he was keep-locked on B-18 company, allegedly in retaliation for plaintiff's grievances and as punishment for plaintiff's assertion that staff planted weapons in his property, as well as complaints made by his family to Central Offices in Albany.  Dkt. #1, ¶¶ 59-62.  Plaintiff also alleges that C.O. Stevens

cut electrical power to plaintiff's cell for at least ten days during this time and threatened physical harm to plaintiff while using racially derogatory language. Dkt. #1, ¶ ¶ 63 & 68.

On May 4, 2007, plaintiff alleges that he was removed from his cell at the request of Sergeant Skomski and taken for a grievance review interview. Dkt. #1, ¶ 71. As he was returning to his cell, plaintiff alleges that C.O. Stevens struck plaintiff with a closed fist to the left side of his forehead. Dkt. #1, ¶ 83. Plaintiff alleges that C.O. Stevens and other unknown corrections officers continued to attack plaintiff, knocking him to the ground and causing him to land on his right shoulder. Dkt. #1, ¶¶ 87-88. Plaintiff alleges that C.O. Rydza joined in on the attack and "kneeled on the Plaintiff's neck with one knee (his right) while the other knee was positioned on the floor near the top of Plaintiff's head." Dkt. #1, ¶¶ 90-91. Plaintiff further alleges that C.O. Rydza "positioned his hands on the Plaintiff's head and periodically struck the Plaintiff with closed fists about the head and face." Dkt. #1, ¶ 92. C.O. Stevens continued to "kick and stomp Plaintiff about the chest, abdomen, back and legs." Dkt. #1, ¶ 96. Sergeant Skomski allegedly failed to intervene and halt the assault. Dkt. #1, ¶ 117. Plaintiff alleges that Nurse Schmidtz misrepresented the severity and extent of plaintiff's injuries and ignored his complaints of pain following the assault. Dkt. #1, ¶¶ 109-111.

Sergeant Skomski, C.O. Stack and C.O. Rydza allegedly falsified documents relating to the assault and Sergeant Skomski and C.O. Stack allegedly testified falsely at plaintiff's disciplinary hearing. Dkt. #1, ¶ ¶ 114, 119 & 122. Superintendent Conway allegedly ordered the destruction of the video of plaintiff's

assault. Dkt. #1, ¶ 135-136. Commissioner's Hearing Officer ("C.H.O."), Schoelkoff allegedly failed to conduct the disciplinary hearing properly by refusing to call witnesses requested by plaintiff and refusing to ask witnesses questions posed by plaintiff, resulting in a sentence of four months in SHU and a recommendation of lost good time credits. Dkt. #1, ¶¶ 123-129. Plaintiff further alleges that Sergeant Skomski, C.O. Stevens and C.O. Rydza are members of the "Black Glove Crew" and conspired to assault plaintiff and cover up the assault by falsifying documents and testimony at the disciplinary hearing and that C.H.O. Schoelkoff conspired to cover up the assault by refusing to investigate plaintiff's claims during the course of the disciplinary hearing. Dkt. #1, ¶ ¶ 70, 99, 118-124 & 127.

Plaintiff alleges that Commissioner Goord, his successor, Commissioner Fischer, and Superintendent Conway "conspired . . . to create an environment of physical and mental torture and abuse, oppression, intimidation, and unchecked violent behavior . . . at Attica" by ignoring inmate complaints and denying grievances without proper investigation. Dkt. #1, ¶ ¶ 34-36. Plaintiff further alleges that they failed to protect him from assault by corrections officers, despite being informed of a threat to plaintiff's health and safety. Dkt. #1, ¶ ¶ 137-138. Plaintiff alleges that he requested assistance from Superintendent Conway in writing and by way of grievances, but C.O. Stevens continued to work in plaintiff's cell block. Dkt. #1, ¶ 137.

Plaintiff's complaint asserts five causes of action:
1. Breach of the duty to protect against defendants Goord, Fischer, Conway, Skomski, Stevens and Rydza;

2. Failure to administer adequate medical remedy against defendant Schmidtz;

   3. Retaliatory treatment for making complaints and filing grievances against defendants Yackeren, Berbary, Sinicki and Stevens;

   4. Malicious prosecution against defendants Berbary, Brown, Stack, Rydza, Skomski, Schoelkoff, and Fischer; and

   5. Unconstitutional organization for the commission of hate crimes against defendants Yackeren, Sinicki, Stack, Rydza, Skomski and Stevens.

Dkt. #1.

## DISCUSSION AND ANALYSIS

**Standard for Judgment on the Pleadings**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Courts faced with motions under Rule 12(c) apply the same standard used to decide motions brought under Rule 12(b)(6).  *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).  In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court revisited the standard of review on a motion to dismiss and concluded that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (internal citations omitted).

In setting forth this standard, the Supreme Court disavowed an often quoted statement from its decision in *Conley v. Gibson* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 561, *quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Supreme Court explained that

> This "no set of facts" language can be read in isolation as saying that any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings; and the Court of Appeals [for the Second Circuit] appears to have read *Conley* in some such way when formulating its understanding of the proper pleading standard ...

*Id.* at 561. The Supreme Court decried that

> On such a focused and literal reading of *Conley's* "no set of facts," a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery. So here, the Court of Appeals specifically found the prospect of unearthing direct evidence of conspiracy sufficient to preclude dismissal, even though the complaint does not set forth a single fact in a context that suggests an agreement. It seems fair to say that this approach to pleading would dispense with any showing of a "'reasonably founded hope'" that a plaintiff would be able to make a case . . ..

*Id.* at 561-62 (internal citations omitted). The Supreme Court then limited *Conley* to describing "the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at 563. The Supreme Court reiterated that it did "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on it face." *Id.* at 570.

Subsequently, the Supreme Court reiterated that

> the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility requirement is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (May 18, 2009) (internal quotations and citations omitted). The Supreme Court also explained the principles underlying its decision in *Twombly* as follows:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claims for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled

> to the assumption of truth. While legal conclusions can
> provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-
> pleaded factual allegations, a court should assume their
> veracity and then determine whether they plausibly give rise
> to an entitlement to relief.

*Id.* at 1949-50 (internal quotations and citations omitted).

When a plaintiff is proceeding *pro se*, as in the instant case, the Court must construe the complaint liberally and interpret it to raise those causes of action supported by the facts alleged regardless of the causes of action asserted. *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471 (2d Cir. 2006) (district court obliged to interpret *pro se* complaint as asserting cause of action for negligence of guard even though plaintiff articulated cause of action for negligence in staffing policy).

**Plaintiff's First Cause of Action**

Plaintiff's first cause of action is denominated "Breach of Duty to Protect" and is asserted against defendants Goord, Fischer, Conway, Skomski, Stevens, and Rydza. Dkt. #1.

As defendants concede, plaintiff's allegations against C.O. Rydza and C.O. Stevens state a claim of excessive force. *See Hudson v. McMillan*, 503 U.S. 1 (1992) (malicious and sadistic application of force, not applied in a good faith effort to maintain or restore discipline, constitutes cruel and unusual punishment). Moreover, plaintiff's allegations against Sergeant Skomski state a claim of failure to intervene.

*See Jean-Laurent v. Wilkinson*, 540 F. Supp.2d 501, 512 (S.D.N.Y. 2008) (law enforcement officers can be held liable under § 1983 for not intervening in a situation where excessive force is being used by another officer when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene).

Superintendent Conway, Commissioner Fischer and Commissioner Goord argue that plaintiff has failed to allege facts from which it may be inferred that these defendants had any knowledge that plaintiff faced a substantial risk of serious harm. Dkt. #14, p.8.

Plaintiff denies that defendants' personal involvement is required. Dkt. #27, p.2. However, plaintiff alleges that Commissioner Goord, Commissioner Fischer and Superintendent Conway "ignored a pattern of misconduct laid out in thousands of grievances and other prisoner complaints" even though they "all had the duty of reviewing and facilitating the investigations of these complaints at some level." Dkt. #27, pp.1-2. Plaintiff also alleges that Commissioner Goord, Commissioner Fischer and Superintendent Conway each "had actual and constructive knowledge that prisoners were routinely abused at Attica and were all responsible for supervising the wrongdoers," explaining that Commissioner Goord and Commissioner Fischer was responsible for supervising Superintendent Conway and Superintendent Conway was responsible for supervising all other defendants in the complaint. Dkt. #27, p.3.

Plaintiff claims that Superintendent Conway had knowledge that plaintiff was in danger of being assaulted by C.O. Stevens by virtue of plaintiff's grievances. Dkt. #27, p.2.

In *Farmer v. Brennan*, the United States Supreme Court determined that "a prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." 511 U.S. 825, 847 (1994). In the instant case, plaintiffs allegations fail to plausibly suggest that these defendants were aware that staff at Attica posed a substantial risk of serious harm to plaintiff. Plaintiff's general allegations of "complaints of illegal behavior on the part of facility staff"[2] and reference to Commissioner Goord and Commissioner Fischer's "control of the highest level of review in the Department of Corrections with relation to these complaints"[3] and Superintendent Conway's "control of the highest level of facility review with relation to these complaints"[4] suggests that plaintiff is attempting to hold these defendants liable because of their position within the DOCS' hierarchy rather than their personal involvement in the alleged assault. See *Iqbal*, 129 S.Ct. at 1937 ("In a § 1983 suit . . . each Government official . . . is only liable for his or her own misconduct."). The filing of a grievance, without more, is insufficient to suggest personal involvement of these defendants. *See Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) (filing of complaints insufficient to state valid Eighth Amendment claims against supervisory

---

[2] Dkt. #1, ¶¶ 34-36.

[3] Dkt. #1, ¶¶ 34-35.

[4] Dkt.. #1, ¶ 36.

officials); *Walker v. Pataro*, 99CIV4607, 2002 WL 664040, at *12 (S.D.N.Y. April 23, 2002) ("if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability.").

Accordingly it is recommended that the failure to protect claim be dismissed against Commissioner Goord, Commissioner Fischer and Superintendent Conway, but that an excessive force claim proceed against C.O. Rydza and C.O. Stevens and a failure to intervene claim proceed against Sergeant Skomski.

**Plaintiff's Second Cause of Action**

Defendants do not move against plaintiff's second cause of action which alleges that that Nurse Schmidtz exhibited deliberate indifference to plaintiff's medical needs following the alleged assault by corrections officers by understating the severity of his injuries in use of force reports and his medical records, denying him pain medication and failing to order x-rays.

**Plaintiff's Third Cause of Action**

Plaintiff's third cause of action is denominated "Retaliatory Treatment for Making Complaints and Filing Grievances" and is asserted against defendants Yackeren, Berbary, Sinicki, and Stevens. Dkt. #1, ¶¶ 143-147.

Defendants argue that the third cause of action should be dismissed because plaintiff has not alleged that these defendants were aware that plaintiff filed a grievance prior to the search of his cell; the removal of property from plaintiff's cell cannot satisfy the adverse action prong of a retaliation claim; the denial of several meals is *de minimis;* and plaintiff's allegation that Sergeant Berbary, C.O. Yackeren and C.O. Sinicki planted weapons in his property is speculative. Dkt. #1, pp.10-11. Defendants also argue that plaintiff has failed to allege a causal relationship between a protected activity and the adverse action taken by defendants. Dkt. #14, p.19.

Plaintiff responds that he "never possessed any weapons and none were secreted inside Plaintiff's keyboard prior to the keyboard leaving his cell." Dkt. #27, p.5. Plaintiff then relies upon defendants' testimony, presumably at the disciplinary hearing, "that they were the only other people to touch the keyboard after it left the Plaintiff's cell" to support his claim that they must have planted the weapon. Dkt. #27, p.5. Plaintiff also argues that he

> authored the grievance on May 1, 2007, accusing Defendant Stevens of cutting power to his disciplinary cell and denying him meals. On May 4, 2007, Plaintiff was sever[e]ly beaten by Defendant Stevens and other prison guards. In that May 1st grievance, Plaintiff also complained about the weapons planted in his property. In this case, the temporal proximity of the complaints and the Defendants' conduct is suggestive enough to serve as circumstantial evidence of retaliation and move Plaintiff's allegations beyond the realm of conclusory.

Dkt. #27, p.21.

Although "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report," the issuance of a false misbehavior report in retaliation for exercising a constitutional right is actionable under Title 42 U.S. C. §1983. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *see Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983."). Thus, plaintiff's allegations that Sergeant Berbary, C.O. Yackeren and C.O. Sinicki planted weapons in plaintiff's personal property within a week of plaintiff filing a grievance is sufficient to state a cause of action for retaliation. Similarly, plaintiff's allegation that C.O. Stevens denied plaintiff meals and refused to restore power to plaintiff's cell for ten days in retaliation for plaintiff filing grievances with respect to the discovery of weapons in his personal property is sufficient to state a claim of retaliation. Accordingly, it is recommended that this aspect of defendants' motion to dismiss be denied.

**Plaintiff's Fourth Cause of Action**

Plaintiff's Fourth Cause of Action is denominated "Malicious Prosecution" and is asserted against defendants Berbary, Brown, Stack, Rydza, Skomski, Schoelkoff, and Fischer. Dkt. #1, ¶¶ 148-157.

Defendants argue that this is essentially a due process claim and that it is barred because the disciplinary hearings at issue in this claim each resulted in a recommended loss of good time. Dkt. #1, p.12. In any event, defendants argue that

the length of SHU confinement is insufficient to demonstrate a protected liberty interest. Dkt. #14, p.15.

Plaintiff responds that the hearing held by C.H.O. Schoelkoff was reversed and expunged on August 3, 2007. Dkt. #27, p.8. Plaintiff asserts that Commissioner Fischer is responsible for C.H.O. Schoellkoff's erroneous disposition because he was "an agent acting under the direction of . . . Commissioner Fischer." Dkt. #27, p.8. With respect to the hearing conducted by Captain Brown, plaintiff states that

> he is not seeking restoration of those "good time" credits lost. In fact, Plaintiff would willingly concede that any judgment in his favor with regard to this part of his claim would not effect [sic] those lost credits if he is allowed to move forward.

Dkt. #27, p.8. Plaintiff sets forth facts explaining how the conditions of his SHU confinement were atypical. Dkt. #27, pp.11-14.

Plaintiff's allegation that Captain Brown denied him due process during the course of a disciplinary hearing relating to the March 10, 2007 misbehavior report by failing to interview a confidential informant, causing plaintiff to be subjected to four months confinement in the Special Housing Unit, is sufficient to state a cause of action. Moreover, the Court accepts plaintiff's statements in response to defendants' motion to dismiss as a waiver of any future challenge to the loss of good time imposed during this disciplinary proceeding. *See Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006), *cert. denied*, 551 U.S. 1145 (2007).

Plaintiff's allegation that C.H.O. Schoelkoff denied him due process by refusing to call witnesses requested by plaintiff, by refusing to ask witnesses questions proffered by plaintiff and denying plaintiff access to documents, resulting in four months SHU confinement, is sufficient to state a cause of action. Given plaintiff's representation that the disciplinary hearing was reversed and the recommended loss of good time credit expunged, it does not appear that *Heck v. Humphrey*, 512 U.S. 477 (1994), remains a concern.

Because plaintiff's due process challenge to the conduct of the disciplinary hearings remains viable, plaintiff's allegations that the misbehavior reports underlying those proceedings were fabricated are also viable. See *Jones v. Coughlin*, 45 F.3d 677, 679-80 (2d Cir. 1995) ("a prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right such as petitioning the government for redress of his grievances."); *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) ("the key inquiry in assessing an allegation that an inmate has been found guilty of false disciplinary charges is whether or not the prison has provided the inmate with the minimum procedural due process protections guaranteed by the Fourteenth Amendment."). Thus, it would be premature to dismiss plaintiff's allegations that Sergeant Berbary fabricated the March 10, 2007 misbehavior report or that C.O. Stack fabricated a misbehavior report dated May 4, 2007. Plaintiff's allegations that Sergeant Skomski and C.O. Rydza falsified documents at testimony during the disciplinary hearing relating to the May 4, 2007 misbehavior report should also proceed. Moreover, plaintiff's allegation that Superintendent Conway

ordered the destruction of a video of this assault (Dkt. #1, ¶¶ 135-136), is most appropriately considered within the context of a due process claim.  *See Livingston v. Piskor*, No. 04-6027, 2005 WL 2759805, at *2 (2d Cir. Oct. 26, 2005) (destruction of videotapes remanded for resolution "along with the other issues associated with plaintiff's procedural due process claim.").  However, plaintiff's allegation that Commissioner Fischer appointed C.H.O. Schoelkoff with knowledge that he wouldn't be fair and impartial (Dkt. #1, ¶ 155), is wholly conclusory and should be dismissed.

**Plaintiff's Fifth Cause of Action**

Plaintiff's Fifth Cause of Action is denominated "Unconstitutional Organization for the Commission of Hate Crimes" and is asserted against defendants Yackeren, Sinicki, Stack, Rydza, Skomski, and Stevens.  Dkt. #1, ¶¶ 158-159.

Defendants argue that plaintiff has not alleged any facts to suggest an agreement among defendants to violate plaintiff's civil rights because of his race.  Dkt. #1, pp. 17-18 & 20.

Plaintiff responds that defendants "Yackeren, Berbary and Sinicki acted on a single plan of which the general nature was known to each" and that the "same is alleged for Defendants Stack, Stevens, Skomski, Brown, Rydza . . . Schoelkoff, and Schnidtz."  Dkt. #27, p.16.  "Plaintiff also makes this allegation with respect to Defendants Fischer, Goord, and Conway."  Dkt. #27, p.16.  Plaintiff states that "[i]t is

universally understood throughout the Attica prison population that this organization [the Black Glove Crew] is a hate group, and that they target minority prisoners. Dkt. #27, p.22.

"To sustain a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a defendant acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds that violated the plaintiff's rights, privileges, or immunities secured by the Constitution or federal courts." *Duff v. Coughlin*, 794 F. Supp. 521, 525 (S.D.N.Y. 1992) (internal quotation omitted). Conspiracy is also an element of a claim pursuant to 42 U.S.C. § 1985(3). *See See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) ("In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."), *cert. denied*, 540 U.S. 1110 (2004); *Amaker v. Haponik*, 198 F.R.D. 386, 392 (S.D.N.Y. 2000) ("To state a Section 1985(3) claim the plaintiff must allege: (1) a conspiracy . . . "). "[C]omplaints containing only conslusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002); *see Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.), *cert. denied*, 464 U.S. 857 (1983). "[A] plaintiff must plead facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp.2d 171, 177 (E.D.N.Y. 1999).

Plaintiff's allegations with respect to the "Black Glove Crew" are wholly conclusory, internally inconsistent as to the participants in the conspiracy and devoid of facts suggesting any discussion at any time in any place of any plan to violate plaintiff's constitutional rights, let alone an agreement to do so. As a result, plaintiff's claims regarding the Black Glove Crew should be dismissed.

## **CONCLUSION**

For the foregoing reasons, this Court recommends that the motion to dismiss be granted in so far as it seeks the dismissal of Commissioner Goord and Commissioner Fischer as defendants in this action and otherwise granted except with respect to the following claims:

1. excessive force against C.O. Stevens and C.O. Rydza;

2. failure to intervene against Sergeant Skomski;

3. deliberate indifference to serious medical needs against Nurse Schmidtz;

4. retaliation against Sergeant Berbary, C.O. Yackeren, C.O. Sinicki, and C.O. Stevens;

5. denial of due process against Captain Brown, C.H.O. Schoelkoff, Sergeant Berbary, C.O. Stack, Sergeant Skomski, C.O. Rydza, and Superintendent Conway.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of**

**Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

SO ORDERED.

DATED:   Buffalo, New York
         March 4, 2011

                                    s/ H. Kenneth Schroeder, Jr.
                                    **H. KENNETH SCHROEDER, JR.
                                    United States Magistrate Judge**